IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:09-CV-198-FL

E.W., a minor child, by BOBBY WILLIAMS and )
LUCY WILLIAMS, his Parents and his Next )
Friends, and individually, )
)
Plaintiffs, )
)
v. )          **MEMORANDUM AND**
)              **RECOMMENDATION**
WAKE COUNTY BOARD OF EDUCATION, )
WAKE COUNTY PUBLIC SCHOOL SYSTEM, )
DR. ADELPHOS JOHN (DEL) BURNS, )
SUPERINTENDENT, in his official capacity and )
individually, MARK WILLIAM HOLLEY, )
PRINCIPAL of FUQUAY-VARINA MIDDLE )
SCHOOL, in his official capacity and )
individually, MAX NATHISON, Assistant )
Principal, in his official capacity and individually, )
CASSIE BRICKER, TEACHER, in her official )
capacity and individually, KENDRICK SCOTT, )
Security Investigator for Wake County Public )
Schools, in his official capacity, and Individually, )
)
Defendants. )

In this case, plaintiffs E.W., a minor child, and his parents Bobby and Lucy Williams, both

individually and as E.W.'s next friends (collectively "plaintiffs"), assert claims under 42 U.S.C. §

1983 ("§ 1983") for the purported violation of E.W.'s rights under the Fourth, Fifth, and Fourteenth

Amendments to the United States Constitution arising from a search of E.W.'s belongings and his

suspension for fighting by the Fuquay-Varina Middle School in 2008. The action now comes before

the court on the motion to dismiss (D.E. 23) the case in its entirety by the defendants, Wake County

Board of Education, Wake County Public School System, Dr. Adelphos John (Del) Burns, Mark

William Holley, Max Nathison, Cassie Bricker, and Kendrick Scott (collectively "defendants"),

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion is supported by a memorandum (D.E. 24). Plaintiffs filed a response in opposition to the motion (D.E. 29). The motion was referred to the undersigned Magistrate Judge for review and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it will be recommended that defendants' motion be granted in part and denied in part.

## BACKGROUND

### I. PROCEDURAL HISTORY

Plaintiffs filed their initial complaint (D.E. 1) in this action on 4 May 2009. They filed their amended complaint the following day in response to a notice of technical deficiencies from the clerk's office. After obtaining extensions of time to respond to the amended complaint, defendants filed their motion to dismiss. The court subsequently allowed defendants' motion to stay discovery pending resolution of the dismissal motion. (*See* Order (D.E. 28)). E.W.'s father, a non-lawyer, had previously filed a pro se suit in this court on E.W.'s behalf, but it was dismissed under the general principle that a non-attorney parent cannot represent his child in a federal case. (20 June 2008 Order (D.E. 29)), *Bobby Williams v. Wake County Public School Sys.*, No 5: 08-CV-92-D (E.D.N.C.)).

### II. PLAINTIFFS' ALLEGATIONS[1]

In the amended complaint, plaintiffs allege four incidents involving E.W.—a crude language incident in December 2007 (Am. Compl. ¶¶ 5-11); a search of his belongings on 4 January 2008 (*id.* ¶¶, *e.g.*, 12-26); a fight on a school bus on 16 January 2008 (*id.* ¶¶ 27-28); and a second fight on a school bus, on 29 January 2008 (*id.*, *e.g.*, ¶¶ 29-68). As indicated, the principal focus of plaintiffs'

---

[1] The summary of the facts reflects the principles set out in the Discussion section below that the allegations must be viewed favorably toward plaintiffs.

2

claims is on the search and the second fight. Nevertheless, in order to help place these two incidents in context, the court will review below plaintiffs' allegations regarding all four incidents.

### A. Crude Language Incident on 21 December 2007

On 21 December 2007, E.W. was a an eighth grade student at Fuquay-Varina Middle School. (Am. Compl. ¶¶ 4, 5). On that date, while E.W. was in health class, another student slammed his chair into E.W.'s private parts. (*Id.*). E.W. reacted by saying, "Don't hit me in my nuggets again." (*Id.*). The teacher took E.W. in the hallway and disciplined him for making that statement. (*Id.*). Since that day was the last day before the Christmas break, E.W. was told that he would be dealt with after the break. (*Id.*).

When E.W. returned to school on 2 January 2008, he was immediately sent to in-school suspension. (*Id.* ¶ 7). At E.W.'s request, Middle School Principal, defendant Mark William Holley ("Holley"), came to speak to E.W. (*Id.*). After Holley told E.W. that he had to serve the in-school suspension because of the statement he had made, E.W. told Holley that his father did not agree to his receiving the suspension because he made it in reaction to being assaulted. (*Id.*). Holley responded that E.W.'s father had no authority over anything that happened to E.W. at the school. (*Id.* ¶ 8). Holley called E.W.'s father, Bobby Williams ("Williams"), to notify him of E.W.'s suspension. (*Id.* ¶ 9).

The next day, 3 January 2008, Holley met with Williams at Williams' request. (*Id.* ¶¶ 9, 10). Holley told Williams that he did not like Williams telling E.W. that Williams had authority over decisions made by the school and that Williams doing so undermined Holley's authority at the school. (*Id.* ¶ 10). Williams responded that he viewed Holley and himself as a team, and that Williams had the authority to question actions by the school with which he disagreed. (*Id.*).

3

Williams also expressed concern about the school's protecting E.W. from bullying by other students and E.W.'s science teacher, defendant Cassie Bricker ("Bricker"). (*Id.*).

The following day, 4 January 2008, Holley met with E.W. (*Id.* ¶ 11). He told E.W. that his father did not have any say over issues that E.W. has at school and that E.W. should let Holley know if anyone bothered him again so that such person could be properly punished. (*Id.*).

**B.    Search of E.W.'s Belongings on 4 January 2008**

Later, on 4 January 2008, during science class, Bricker accused E.W. of taking a pad of her sticky notes. (*Id.* ¶ 12). Bricker allowed students in the class to search E.W.'s book bag, binder, and jacket for the sticky notes without E.W.'s consent, in purported violation of the Wake County Public School System Policy for Search and Seizures. (*Id.* ¶¶ 12, 14, 25). No sticky notes were found. (*Id.* ¶ 12).

At the request of E.W., who was upset, Bricker allowed him to call his father from the classroom. (*Id.*). After E.W. spoke with his father, Williams asked Bricker why she would think that E.W. wanted to steal from her. (*Id.*). Bricker responded that E.W. was the only one in the area where the sticky notes were located. (*Id.*). Neither Bricker nor any other witness saw E.W. take the sticky notes. (*Id.*). Williams then asked Bricker who gave the students authority to search E.W.'s belongings, and Bricker responded that the students were E.W.'s friends. (*Id.*).

Williams then went to the school and met with Holley, objecting to Bricker's conduct and requesting that E.W. be removed from her class. (*Id.* ¶ 13). Holley responded that the incident was all E.W.'s fault. (*Id.* ¶ 14). He also said that E.W. would not be removed from the class without a behavioral science teacher first observing how E.W. acted in other classes. (*Id.*).

4

Williams contacted Holley's supervisor, who in turn contacted Holley. (*Id.* ¶¶ 15-22). The school decided to remove E.W. from the class. (*Id.* ¶ 22). On the morning of 14 January 2008, Williams and his wife, Lucy Williams (collectively "the Williamses") met with Holley about taking the necessary steps to effect the removal. (*Id.* ¶ 24). The Williamses had kept him out of school from the day of the search until that day. (*Id.* ¶ 23).

That afternoon, a school system security investigator, defendant Kendrick Scott ("Scott"), questioned E.W. about the search incident in the presence of a counselor and, at their request, the Williamses. (*Id.* ¶ 25). Based on his interview of E.W., his other investigation, and his experience, Scott concluded that E.W. had given his consent for the search "by indicating to Science Teacher Cassie Bricker that she could search him." (*Id.* ¶ 25). Later that day, the Williamses sent an email to Holley's supervisor expressing their view that the search violated E.W.'s rights, their concern that nobody accepted responsibility for Bricker's conduct, and their intent to consult an attorney about other remedies available to them. (*Id.* ¶ 26).

## C.    School Bus Fight on 16 January 2008

On 16 January 2008, E.W. reported to Holley that he had been physically bullied on the school bus by another student, S.M. (Am. Compl. ¶ 27). E.W. had previously reported to Holley that he had been bullied by S.M. (*Id.*). Despite telling E.W. that he would handle the situation, Holley took no action, in violation of Wake County Public School System's policy relating to bullying prevention. (*Id.* ¶ 28).

### D.    School Bus Fight on 29 January 2008

#### 1.    *The Fight*

On 29 January 2008, after E.W. sat down on the school bus, S.M. sat down in the row in front of E.W.  (*Id.* ¶ 29).  S.M. made threatening comments to E.W. and spoke with others in the vicinity about harming E.W.  (*Id.*).  S.M. then picked up his book bag, full of books, and threw it at E.W.'s head, breaking E.W.'s glasses in two and cutting E.W.'s face.  (*Id.*).  S.M. next punched E.W. in the face three times.  (*Id.*).  E.W. began punching S.M. in the back in self-defense without realizing that his tuba mouthpiece was in his hand.  (*Id.*).  When S.M. moved his head, the tuba mouthpiece made a small scratch on S.M.'s head.  (*Id.*).

The school bus driver then ordered S.M. off the school bus, stopping at a location that was not S.M.'s designated stop.  (*Id.*).  An employee at a business near the location where S.M. got off the bus called an ambulance, which then took S.M. to the hospital for treatment.  (*Id.* ¶ 30).

#### 2.    *Investigation by the Police*

Later that day, a Fuquay-Varina police officer came to E.W.'s house and talked with E.W. and Williams about the fight on the school bus.  (*Id.*).  The same person who had called an ambulance for S.M. had also called the police.  (*Id.*).  The officer told Williams that S.M. had been taken to a hospital for treatment.  (*Id.*).  The officer observed that E.W. had a bruise around his nose and a bloody scratch.  (*Id.*).  E.W. told his version of the fight to the officer and explained that his tuba mouthpiece may have scratched S.M.  (*Id.*).  The officer took the tuba mouthpiece for the purpose of his investigation.  (*Id.*).

6

### 3.     *Questioning of E.W. and Other Investigation by the School*

Also on 29 January 2008, Assistant Principal, defendant Max Nathison ("Nathison"), called Williams to say that the bus driver had reported the fight. (*Id*. ¶ 31). He also said that the school would begin an investigation the next day. (*Id*.).

That day, 30 January 2008, E.W. was pulled out of class and sent to the main office. (*Id*. ¶ 33). Nathison, Scott, and Haywood, the seventh grade assistant principal, began questioning E.W. about the fight. (*Id*. ¶ 33). E.W. asked to call his father, and stated that he did not want to answer any more questions until his father arrived. (*Id*.). Scott told E.W. that he could not call his father and continued to question E.W. E.W. then said that he was "going to leave and go back to class." (*Id*.). Scott stood up, locked the door to the room, and told E.W. that he could not leave until he told them what happened on the school bus. (*Id*.). E.W. then gave his statement, saying that S.M. hit him first with a bag full of books and that E.W. acted in self-defense by hitting S.M. (*Id*.).

E.W. was next escorted by Nathison and Scott to the in-school suspension room and told to put his statement in writing. (*Id*. ¶ 34). E.W. wrote out his statement in approximately five minutes. (*Id*.). After Nathison came back and took E.W.'s written statement, E.W. remained in the in-school suspension room for over two hours and was not allowed to leave. (*Id*.). The policies of the Board purportedly do not provide for a due process hearing prior to the imposition of a suspension up to ten days in length. (*Id*. ¶ 102).

S.M. and other students who were witnesses on the bus also gave statements about the fight. (*Id*. ¶ 43). One of the students, C.F., told his mother that Nathison and Scott told C.F. that if he continued to give his statement, which corroborated E.W.'s version of events, C.F. would receive

7

the same punishment that E.W. would receive. (*Id.*). E.W.'s parents were never provided copies of the students' statements. (*Id.*).

### 4.   *Suspension of E.W.*

Later that same day, at a meeting at the school, Nathison told Williams that E.W. was being suspended for ten days and that a long-term suspension would be recommended.[2] (*Id.* ¶ 36). Nathison also provided Williams formal written notice of this action; a letter from Holley stating that the action against E.W. was based on his violation of a specified Board policy on assault; and a copy of the appeal procedures for recommendations on suspensions longer than ten days. (*Id.* ¶¶ 37, 38). By three subsequent letters, school officials added as further grounds for the action against E.W. violation of specified Board policies on instigation of a fight, failure to observe safety rules, assault involving a weapon, and weapons. (*Id.* ¶¶ 44, 45, 47).

### 5.   *Appeal to School-Based Panel*

On 4 February 2008, Williams submitted a request for appeal of the recommendation for long-term suspension. (*Id.* ¶ 46). The school-based hearing was held on 20 February 2008. (*Id.* ¶ 54). The primary evidence presented at the hearing was the written statement by E.W. (*Id.* ¶ 56). The hearing panel issued its report the same day, finding that while E.W. had not violated a policy on fighting, he had violated policies on assault, failure to observe safety rules, assault involving a weapon, and weapons. (*Id.*). The hearing panel disagreed with the length of the recommended suspension, but understood that it was required by Board policy. (*Id.*).

---

[2] N.C. Gen. Stat. § 115C-391(b) provides the principal of a school authority to suspend a student for a period of ten days or less for willful violation of policies of conduct established by the local board of education. Other provisions of the same statute provide for longer-term suspensions. *See* N.C. Gen. Stat. § 115C-391(d1), (d3), (d4).

E.W.'s parents had previously received a letter, dated 11 February 2008, from the Department of Juvenile Justice and Delinquency Prevention informing them that S.M. was being charged with the offense of assault and battery, and that E.W.'s parents were being contacted because E.W. was a victim of this offense. (*Id.* ¶ 52). E.W. was never formally charged with the offense assault and battery. (*Id.* ¶ 53).

### 6. *Appeal to Superintendent*

On 26 February 2008, E.W.'s parents filed an appeal to the superintendent from the hearing panel's decision. (*Id.* ¶ 56). In a letter dated 3 March 2008, the superintendent informed them that the Discipline Review Committee had reviewed the information presented at the school hearing and was upholding the long-term suspension recommendation. (*Id.* ¶ 60). A second letter, dated 13 March 2008, amended the 3 March letter to add that E.W. had been found not guilty of violating the policy on instigation. (*Id.* ¶ 61).

### 7. *Appeal to Board*

On 18 March 2008, E.W.'s parents filed a request for hearing with the Board. (*Id.* ¶ 64). Following a hearing on 16 April 2008, the Board upheld E.W.'s long-term suspension. (*Id.* ¶¶ 65-66). S.M. did not receive a ten-day suspension or a long-term suspension on account of the fight on the bus. (*Id.* ¶ 68).

## III. PLAINTIFFS' LEGAL CLAIMS

In their amended complaint, plaintiffs assert five claims under 42 U.S.C. § 1983 for constitutional violations: (1) violation of E.W.'s right to procedural due process under the Fourteenth Amendment by depriving him of a due process hearing prior to imposition of his ten-day suspension and the Board's failure to adopt a policy requiring such a hearing (Am. Compl. ¶¶ 98-

9

105); (2) violation of E.W.'s right to substantive due process under the Fourteenth Amendment by the Board's failure to adopt a policy requiring such a hearing and the acquisition of his oral and written statements about the 29 January 2008 fight by coercive means, including detaining him, making it improper for school officials to have relied on his written statement in the disciplinary proceedings (*id.* ¶¶ 106-09); (3) violation of E.W.'s rights under the Equal Protection Clause of the Fourteenth Amendment by imposition of more severe discipline against him than S.M. for the 29 January 2008 fight (*id.* ¶¶ 110-15); (4) violation of E.W.'s right under the Fourth Amendment to be free from unreasonable searches and seizures by the search of his belongings on 21 December 2007 and the seizure of his person during questioning about the 29 January 2008 fight (*id.* ¶¶ 116-121); and (5) violation of E.W.'s Fifth Amendment right against self-incrimination by coercing from him the statements he provided about the 29 January 2008 fight (*id., e.g.,* ¶¶ 3, 33, 34, 86, 119, 120, 125).[3] As relief, the amended complaint seeks: actual, compensatory, punitive, and additional unspecified damages for E.W.; compensatory and out-of-pocket expenditures for his parents; attorney's fees, costs, and interest for E.W.; removal of the long-term suspension from E.W.'s school record; and establishment of procedures by the Board providing for a due process hearing prior to the effective date of a ten-day suspension. (*Id.* 21-22).

## DISCUSSION

In their dismissal motion, defendants challenge certain claims irrespective of the parties involved and other claims because of the parties involved. In the aggregate, the motion seeks dismissal of the entire case. The claims whose dismissal defendants seeks without regard to party

---

[3] While the first four claims listed are denominated as separate claims for relief in the amended complaint, the Fifth Amendment claim is not. Nevertheless, plaintiffs clearly intend to assert it, as the paragraphs cited indicate. There is a fifth claim for relief denominated as such in the amended complaint, but it is repetitive of the prior claims.

are: (1) the procedural due process claim; (2) the substantive due process claim; (3) the equal protection claim; (4) the Fourth Amendment claim; and (5) the Fifth Amendment claim. Claims whose dismissal defendants seek because of the related party are: (1) the claims against the individual defendants in their official capacities; (2) the claims against the individual defendants in their individual capacities; (3) the claims against the Board; and (4) any claims on behalf of E.W.'s parents. The court will address each of these claims in turn after reviewing applicable standards of review.

## I. STANDARDS OF REVIEW

### A. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Ordinarily, the complaint need contain simply "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *See Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007) (internal quotation marks omitted)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible if the plaintiff alleges factual content "that allows the court to draw the

11

reasonable inference that the defendant is liable for the misconduct alleged" and shows more than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pleaded allegations of the challenged complaint and view those allegations in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *see also Lambeth v. Bd. of Comm'rs*, 407 F.3d 266, 268 (4th Cir. 2005) (court must accept as true all factual allegations of the complaint). All reasonable factual inferences from the allegations must be drawn in the plaintiff's favor. *Edwards*, 178 F.3d at 244. However, bare assertions of legal conclusions or formulaic recitations of the elements of a claim are not entitled to be assumed true. *Iqbal*, 129 S. Ct. at 1951.

**B.    § 1983 Standard**

Section 1983 does not provide a "source of substantive rights," but rather a "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "To state a cause of action under § 1983, a plaintiff must allege facts indicating that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under the color of state law." *Morris v. Edmonds*, No. 5:08-CV-239-FL, 2008 WL 2891014, at *3 (E.D.N.C. 25 July 2008) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## II.    FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS CLAIM

As indicated, the basis of plaintiffs' procedural due process claim is that E.W. was not provided a due process hearing prior to the imposition of his ten-day suspension and that the Board

12

failed to promulgate a policy providing for such a hearing. They rely on the Supreme Court's decision in *Goss v. Lopez*, 419 U.S. 565 (1975). Defendants contend that E.W. did receive any required hearing and that the law does not compel the Board adoption's of the proposed policy. Defendants are correct.

In *Goss*, the Supreme Court recognized that the temporary suspension of a public school student implicates his right to due process under the Fourteenth Amendment. 419 U.S. at 581. The Due Process Clause thus requires "rudimentary precautions" against unfair or mistaken findings of misconduct and arbitrary exclusion from school. *Id.* More specifically, "due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* The Court emphasized that these requirements can be satisfied by an informal discussion between a school official and the student:

> In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred. We hold only that, in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is.

419 U.S. at 582. As a general rule, the notice and "rudimentary hearing," as the Court described it, should precede removal of the student from school, although it may come after it if the student's presence poses a risk of danger to person or property, or disruption to the academic process. 419 U.S. at 582-83.

Consistent with *Goss*, the Fourth Circuit has recognized that while students do not lose their constitutional rights when they enter school, "[i]n the final analysis, the balance of rights and interests to be stricken in the disciplinary process is a task best left to local school systems, operating

13

as they do, within the parameters of state law." *Wofford v. Evans*, 390 F.3d 318, 324 (4th Cir. 2004) (upholding dismissal of claims by student and her mother arising from school's detention, search, and interrogation of student for suspected gun possession, which proved unfounded). "It would be a misfortune to exchange the informality of the school setting for the adversarial atmosphere of formalized procedure." *Id.*

The allegations in plaintiffs' complaint show that E.W. was given more than the minimal process due. On the day of the incident, Nathison called Williams and informed him that the bus driver had reported a fight and that an investigation would begin the next day to determine what happened. (Am. Compl. ¶ 31). The telephone call provided E.W. effective notice of what he was being accused of—fighting on the school bus on 29 January 2008—and the basis for the accusation—the bus driver saw the fight. Notably, the telephone call to Williams was in keeping with the pattern of communication the school had developed with E.W. and his parents in dealing with prior incidents. (*Id., e.g.,* ¶¶ 9, 12, 25).

The following morning, school officials provided E.W. the opportunity to present his version of the fight two times, once orally and once in writing. (*Id.* ¶¶ 33, 34). And he, in fact, did so. In the main office, "E.W. told . . . [Nathison and Scott] what happened on the January 29, 2008 school bus that [S.M.] hit him first with a book bag full of books, and E.W. acted in self defense by hitting [S.M.]." (*Id.* ¶ 33). Then, in the in-school suspension room, "E.W. wrote out his statement," which "clearly described his own actions as self defense when he tried to protect himself after [S.M.] hit E.W. first with a book bag full of books." (*Id.* ¶¶ 34, 63). Plaintiffs, of course, contend that school officials did not give E.W. the requisite opportunity to tell his side of the fight because they told him he was not free to leave the main office and then the in-school suspension room until he gave his

14

statements. But the school officials' action was a reasonable response to E.W.'s refusal to answer when denied permission to call his father and his stated intention to leave and return to his class. (*Id.* ¶ 33). The officials' action was further justified by their concern that Williams' prior statements about his authority with respect to events at school may have undermined E.W.'s respect for school authorities. (*Id.* ¶ 10). It was not required that E.W.'s parents be present. *Wofford*, 390 F.3d at 323. Decisions in other student discipline cases support the determination that defendants did not violate E.W.'s procedural due process rights. *E.g.*, *Wofford*, 390 F.3d at 322 n.1 (noting that interrogation of fourth grade student suspected of having had a gun passed *Goss* test where officials refused student's requests for her mother and to use bathroom); *Watson ex rel. Watson v. Jones County School Dist. ex rel. Jones County School Bd. of Educ.*, No. 2:07cv100-KS-MTP, 2008 WL 4279602, at *10 (S.D. Miss. 11 Sep. 2008) (granting summary judgment dismissing claim that two interrogations of middle school student not attended by his parents or lawyer in which school official demanded a truthful account of altercation involving student violated student's procedural due process rights); *Boynton v. Casey*, 543 F. Supp. 995, 996-98 (D. Me. 1982) (dismissing on dismissal motion claim that school officials' detention and interrogation of student for more than an hour about marijuana use not attended by his parents or counsel violated his procedural due process rights).

Because E.W. was not, in fact, denied the due process owed him, plaintiffs' companion argument that the Board's failure to adopt a policy providing for notice and a hearing before a suspension of up to ten days also fails. Their premise that *Goss* requires the Board to adopt such a policy is unfounded, and they cite no case law to support it. Moreover, the Board apparently has adopted a policy (Board Policy 6530.2), which plaintiffs themselves set out in the amended

15

complaint, providing notice and hearing procedures consistent with those required in *Goss*.[4] (*See* Am. Compl. ¶ 77). The amended complaint shows that school officials provided E.W. the requisite notice and hearing under this policy before he was suspended. For this and the other reasons discussed, it will be recommended that plaintiffs' procedural due process claim be dismissed.

## III. FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIM

Plaintiffs' claim for violation of E.W.'s substantive due process rights is based on much of the same conduct underlying their procedural due process claim. The claim lacks merit as a matter of law, as defendants contend.

"The substantive component of the Due Process Clause protects students against abusive government power as exercised by a school." *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 506 (6th Cir. 1996). To demonstrate a violation of the right to substantive due process, a plaintiff must show that the act complained of is "so arbitrary and egregious as to 'shock the conscience.'" *Butler v. Rector and Bd. of Visitors of the College of William & Mary*, 121 Fed. Appx. 515, 519 (4th Cir. 2005); *see also Hicks ex rel. Hicks v. Halifax Co. Bd. of Ed.*, 93 F. Supp. 2d 649, 665 (E.D.N.C. 1999) (holding that a school board's decision to impose a long-term suspension when a student failed

---

[4] Board Policy 6530.2 provides, in relevant part, as follows:

> The principal and/or teacher shall investigate any instance of alleged misconduct and endeavor with reason to hear every side of the controversy. The student will be confronted with the charges. Students are to be encouraged to raise any defense felt to be available. The principal and/or teacher will endeavor to question witnesses requested by the student. When a principal decides to suspend a student, the principal shall: A. Make every effort to talk by telephone with the parents before suspension and/or hold a conference with the parents before the student returns to school. B. Send a timely written notice (form 1716) to the parents and Superintendent adequately stating the charge against the student and containing facts sufficiently particular to describe the nature of the offense.

(Am. Compl. ¶ 77).

16

to comply with mandatory school uniform policy was not conduct that "shocked the conscience" and therefore did not violate the student's substantive due process right).

For the reasons previously discussed in connection with the procedural due process claim, the manner in which school officials interrogated E.W. was not arbitrary or egregious, and certainly does not shock the conscience. Rather, the detention of E.W. in the main office for questioning, and his subsequent detention in the in-school suspension room to write his statement were reasonable measures undertaken to obtain his version of what happened at the 29 January 2008 fight. As defendants aptly point out, there are no allegations that E.W. was coerced into saying or writing anything other than what he believed to be the true version of events. *See Wofford v. Evans*, No. 7:02CV00762, 2002 WL 32985799, at *1, 5-7 (W.D. Va. 17 Dec. 2002) (dismissing substantive due process claims arising from same interrogation during which school interrogator told student, "We can do this the hard way or the easy way," and after police entered the room, "Now we're going to do this the hard way") (same interrogation referenced in citation to related 4th Cir. case above). Because it was lawful, the manner in which E.W.'s written statement was obtained did not preclude school officials from relying upon it in the subsequent disciplinary proceedings against him. Non-adoption by the Board of the pre-suspension notice and hearing policy also does not shock the conscience, the court having already found that the Board was not required under *Goss* to adopt such a policy. The court has considered the other alleged conduct by defendants and finds that none of

it shocks the conscience either.[5] It will accordingly be recommended that plaintiffs' substantive due process claim be dismissed.

## IV.    FOURTEENTH AMENDMENT EQUAL PROTECTION CLAIM

The principles governing plaintiffs' claim under the Equal Protection Clause that E.W. was disciplined less severely than S.M. for the 29 January 2008 fight are well established. The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. To state a claim under the Equal Protection Clause, a plaintiff must plead sufficient facts to "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Williams v. Hansen*, 326 F.3d 569, 576 (4th Cir. 2003) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). Courts have applied a two-tiered analysis when evaluating equal protection claims. *Hinton v. Conner*, 366 F. Supp. 2d 297, 313 (M.D.N.C. 2005). "Strict scrutiny applies if a person is treated differently based upon membership in a suspect class or because of the exercise of a fundamental right." *Id.* (citing *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976)). This standard requires a showing by the government that the challenged classification was "necessary to promote a compelling governmental interest." *Id.* Absent a burden on the exercise of a fundamental right or disparate treatment of a member of a suspect class, "the government need only show a

_____

[5] Such conduct includes E.W.'s detention in the in-school detention room for two hours after he wrote his statement. Requiring an eighth grader to remain in in-school suspension for two hours immediately after obtaining his statements in a discipline investigation and prior to the initiation of a ten-day period of suspension and notification of his parents about the suspension can hardly be viewed as arbitrary or egregious. *See Hassan v. Lubbock Independent School Dist.*, 55 F.3d 1075, 1081 (5th Cir. 1995) (holding that, during a school field trip to juvenile detention center, a misbehaving student's placement in the center's intake room for 50 minutes while other students proceeded with their field trip was a *de minimus* deprivation and did not implicate either procedural or substantive due process guarantees).

reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (citing *Bd. of Trs. v. Garrett*, 531 U.S. 356, 367 (2001)). Further, the United States Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Here, the parties agree (Defs.' Mem. 17-18; Plfs.' Resp. 17), and the court finds, that the rational basis test as applicable to a class of one controls. There are no allegations that E.W. belongs to a suspect class, and the Supreme Court "has not identified education as a fundamental right." *Sellers by Sellers v. School Bd. of City of Mannassas, Va.*, 141 F.3d 524, 531 (4th Cir. 1998) (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33-37 (1973)).

In their motion, defendants seek dismissal of the equal protection claim on the grounds that the injury suffered by S.M. in the fight, which required medical treatment, provides a rational basis for E.W. receiving a long-term suspension and S.M. receiving no discipline. The court disagrees.

The facts as alleged by plaintiffs show that S.M.'s role in the fight was more aggravated than E.W.'s. S.M. started the fight. He taunted E.W. verbally, threw his full book bag at E.W.'s head, breaking his glasses, and then punched E.W. in the head. (Am. Compl. ¶ 29). E.W. fought solely in self-defense, punching S.M. in the back. (*Id.*).

Although S.M. was injured by E.W.'s tuba mouthpiece when he turned his head, E.W. did not realize he had the mouthpiece in his hand. (*Id.*). Moreover, E.W. was also injured, suffering a bloody scratch from his broken glasses and a bruise around his nose. (*Id.* ¶¶ 29, 30).

19

Further, according to the Department of Juvenile Justice and Delinquency, S.M. was charged with assault and battery. (*Id.* ¶ 52). Not only was E.W. was not charged, the Department classified him as the victim of the assault. (*Id.*).

Based on these alleged facts, the court cannot say, as defendants assert, that the injury suffered by S.M. provided a rational basis for school officials not to discipline S.M. at all and to impose a long-term suspension on E.W. Nor can the court identify any other rational basis for the school officials' actions based on the allegations in the amended complaint. By this determination, the court is not, of course, finding that no facts exist that could provide a rational basis for the action taken, only that no such facts are included in the amended complaint.

Plaintiffs allege expressly that the disparate discipline accorded E.W. was a result of "intentional or purposeful discrimination." *Williams*, 326 F.3d at 576. Specifically, they state that it was "motivated by [Holley's] conscious desire to intentionally single out E.W. for the severe punishment of long-term suspension" in retaliation for Williams having confronted Holley regarding the improper search of E.W.'s belongings. (Am. Compl. ¶¶ 88, 90).

The court concludes that plaintiffs have adequately stated a claim for violation of the Equal Protection Clause. It will therefore be recommended that the defendants' motion to dismiss this claim be denied.

## V.    FOURTH AMENDMENT CLAIM

Plaintiffs challenge as violative of the Fourth Amendment both the detention of E.W. for questioning in the main office and in the in-school suspension room for preparation of his written statement on 30 January 2008, and the search of E.W.'s belongings on 21 December 2007.

Defendants seek dismissal of both portions of this claim. The defendants' challenge to both portions of this claim should be denied.

As the Fourth Circuit has noted, "the Fourth Amendment forbids searches and seizures of citizens absent a warrant supported by probable cause," but "[s]earches of students conducted by school officials . . . are subject to a lesser degree of procedural scrutiny." *Wofford*, 390 F.3d at 326. The search or seizure of a student "need only be 'justified at its inception' and 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985)). A search or seizure is "justified at its inception when there are 'reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.'" *Id.* (quoting *T.L.O.*, 469 U.S. at 341-42). The detention of a student for questioning in a disciplinary matter can constitute a seizure of the student within the meaning of the Fourth Amendment. *See Wofford*, 390 F.3d at 325.

### A.    Detention of E.W.

Turning now to the detention of E.W. on 30 January 2008, the court notes at the outset that defendants appear to concede that it constituted a seizure of E.W. for Fourth Amendment purposes. The court will treat it as such.

The detention of E.W. was clearly justified at its inception. Based on the eyewitness information from the bus driver, school officials had a reasonable basis to believe that E.W. violated school policies by participating in the 29 January 2008 fight on the school bus. Nathison and Scott therefore acted lawfully in removing him from class and detaining him in the main office for questioning.

21

Continuing the detention of E.W. in the in-school suspension room was a reasonable extension of the scope of the detention. There was obvious value in having E.W. put in writing the information he had provided orally during questioning and in having him do so immediately.

But plaintiffs allege that E.W. was kept in the in-school suspension room for over two hours after he had provided the written statement. (Am. Compl. ¶ 34). The amended complaint, read in the light most favorable to plaintiffs, does not definitively show that this further period of detention was reasonably related in scope to the circumstances which justified the detention in the first place. Indeed, the amended complaint is largely silent on the reasons for the continued detention, and the court could only speculate as to what they might be. Defendants have thus failed to demonstrate that plaintiffs "cannot prove any set of facts in support of [their] claim entitling [them] to relief." *Edwards*, 178 F.3d at 244. Accordingly, it will be recommended that defendants' motion to dismiss the Fourth Amendment claim based on E.W.'s seizure be denied.

### B.      Search of E.W.'s Belongings

The basis of plaintiffs' claim relating to the search of his belongings is that Bricker directed other students to conduct the search without E.W.'s consent. (Am. Compl. ¶¶ 12, 14, 121). In their motion, defendants do not focus on the first requirement for validity of the search, namely, whether the allegations of the amended complaint established reasonable grounds for suspecting that the search would turn up evidence that E.W. had stolen the sticky notes.[6] Rather, the basis for their challenge to this claim is that plaintiffs have failed to allege that the search was the product of state action, as required to sustain a § 1983 claim. *See Morris*, 2008 WL 2891014, at *3 (noting that one

---

[6] In light of its recommended disposition of this portion of defendants' motion, the court need not address whether this first requirement is satisfied by the allegations of the amended complaint.

22

of the requirements for a § 1983 action is that the alleged deprivation of rights "resulted from conduct committed by a person acting under the color of state law"). Instead, defendants assert that the search was undertaken by private individuals, namely, other students.

Key to resolution of this issue is the allegation that after defendant Bricker accused E.W. of stealing her sticky notes, she "*allowed* students in E.W.'s class to search his book bag, binder, and jacket." (Am. Compl. ¶ 12) (emphasis added). Plaintiffs also allege that when Williams asked Bricker who gave the students the authority to search, Bricker responded that "the students were E.W.'s friends." (*Id.*). While the court agrees that plaintiffs' amended complaint does not expressly state that Bricker directed the students to search E.W.'s belongings, these allegations could reasonably be read to such effect. Because the Rule 12(b)(6) standard requires the court to accept plaintiffs' allegations in the light most favorable to them, the court must conclude that plaintiffs have alleged that the search was conducted at the direction of Bricker.

Accordingly, it will be recommended that defendants' motion to dismiss plaintiffs' Fourth Amendment claim based on the search of E.W.'s belongings be denied. The court having already found that defendants' challenge to the other portion of plaintiffs' Fourth Amendment claim should be denied, it is being recommended that defendants' entire challenge to plaintiffs' Fourth Amendment claim be denied.

## VI.    FIFTH AMENDMENT CLAIM

Defendants seek dismissal of plaintiffs' Fifth Amendment claim—that the statements E.W. made regarding the 29 January 2008 fight and later used against him in the disciplinary proceedings were coerced from him in violation of his right against self-incrimination—on the grounds that the statements were not used in a criminal proceeding against E.W. This contention has merit. The

Fourth Circuit has clearly held that there can be no violation of the Fifth Amendment protection against self-incrimination when the subject evidence was not used in a criminal proceeding. *Riley v. Dorton*, 115 F.3d 1159, 1164 (4th Cir. 1997) (noting that "most courts refuse to find a Fifth Amendment violation even where statements were made, but were not actually used in a criminal proceeding"); *see also Wofford*, 390 F.3d at 322 n.1 (rejecting a student's Fifth Amendment claim relating to evidence used in school detention proceedings). Accordingly, it will be recommended that plaintiffs' Fifth Amendment claim be dismissed.

## VII. CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES

Defendants seek dismissal of plaintiffs' claims against the individual defendants (*i.e.*, Burns, Holley, Nathison, Bricker, and Scott) in their official capacities on the grounds that they are essentially claims against the Board. Defendants are correct that an official capacity suit is "to be treated as a suit against the entity." *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004). The courts further recognize that such claims may be dismissed as duplicative. *Martin*, 355 F.3d at 783 (upholding dismissal of official-capacity claims under § 1983 against school system superintendent as duplicative of claims against school board); *Locklear v. Person County Bd. of Educ.*, No. 1:05CV00255, 2006 WL 1743460, at *13 (M.D.N.C. 22 Jun. 2006) (same). Accordingly, it will be recommended that the claims against each of the individual defendants in their official capacity be dismissed.

## VIII. CLAIMS AGAINST INDIVIDUAL DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES

Defendants assert that the claims against individual defendants should be dismissed on the basis of the affirmative defense of qualified immunity. Qualified immunity protects government

24

officials from liability insofar as their actions do not violate clearly established constitutionally protected rights of which a reasonable official would have known. *See Henderson v. Simms,* 223 F.3d 267, 271 (4th Cir. 2000). But courts have generally held that a motion to dismiss, especially one filed before a defendant has even answered the complaint, is an inappropriate means by which to raise a qualified immunity defense. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982) (holding that it would be inappropriate for a court to rule on an affirmative defense of qualified immunity on a Rule 12(b)(6) motion because defendants might choose to waive the defense and because a qualified immunity defense depends on the presentation of evidence that has yet to be developed); *see also Sullivan v. Stein*, No. CIV 3:03CV1203(MRK), 2005 WL 2209301, at *4 (D. Conn. 12 Sep. 2005) (declining to address defendants' qualified immunity argument in their motion to dismiss because the court could not "make this determination on the basis of the current record"); *Roberts v. Toal*, Civ. A. No. 94-608, 1994 WL 725955, *8 n.5 (E.D. Pa. 30 Dec. 1994) ("[A] motion to dismiss is generally an inappropriate procedural stage at which to raise a qualified immunity defense in light of the paucity of facts revealed in the record"); *Verner v. State of Colo.*, 533 F. Supp. 1109, 1116 (D. Colo. 1982) (declining to address defendants' qualified immunity argument in a motion to dismiss on the grounds that defendants "must plead and have the burden to prove [this defense] by a preponderance of evidence"), *aff'd,* 716 F.2d 1352 (10th 1983).

In accordance with this precedent, the court finds that the record here is not sufficiently developed to enable it to rule on the qualified immunity defense. Accordingly, it will be recommended that defendants' motion to dismiss claims against any of the individual defendants on the basis of qualified immunity be denied.

## IX.  CLAIMS AGAINST BOARD

Defendants assert that the claims against the Board should be dismissed because plaintiffs have failed to allege that any of the constitutional violations resulted from a Board policy, practice, or custom.  The court agrees.

Under North Carolina law, a local school board is deemed a municipality.  *Barbier v. Durham Count Bd. of Educ.*, 225 F. Supp. 2d 617, 630 (M.D.N.C. 2002) (citing *Sides v. Cabarrus Mem. Hosp., Inc.*, 22 N.C. App. 117, 120, 205 S.E.2d 784, 786-87, *modified on other grounds*, 287 N.C. 14, 213 S.E.2d 297 (1975)).  It is well established that a municipality cannot be held liable under § 1983 for injuries caused by its employees based on a theory of respondeat superior.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Rather, the injury must have been caused by a policy, custom, or practice of the municipality.  *See id.,* 436 U.S. at 694; *Walker v. Prince George's County, Md.,* 575 F.3d 426, 431 (4th Cir. 2009).  "[A] school board can be held responsible for a constitutional violation of a teacher only if the violation occurred as a result of a policy, custom or practice established or approved by the board."  *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3rd Cir. 2000).  A plaintiff must plead the existence of such a policy, custom, or practice for a § 1983 claim against a municipality to survive.  *Walker*, 575 F.3d at 431.

Plaintiffs here have not met this burden.  The only Board policy that plaintiffs allege resulted in a violation of E.W.'s constitutional rights is the Board policy previously discussed providing for notice and hearing procedures.  (*See, e.g.*, Am. Compl. ¶¶ 69, 72-74, 81, 95-97, 99, 102-105, 107, 109, 123, 124).  But, as the court has concluded, that policy is consistent with *Goss* and the apparent application of that policy to E.W. did not result in violation of his rights under *Goss* or otherwise. With respect to plaintiffs' allegation that the search of E.W.'s belongings violated his rights,

26

plaintiffs contend that the violation occurred because Bricker was *not* following Board policy. (Am. Compl. ¶¶ 25, 26, 87). The amended complaint does contain the allegation that the Board's "Due Process policies are patently and fundamentally flawed, and violate E.W. Williams Due Process and Equal Protection rights guaranteed by the Fourteenth Amendment of the United States Constitution." (*Id.* ¶ 99). But this conclusory allegation is insufficient. It fails to identify any particular policies that the allegations of the amended complaint otherwise show violated plaintiffs' rights. *See Walker*, 575 F.3d at 431 (citing *Iqbal*, 129 S. Ct. at 1949). Plaintiffs having failed to allege facts showing the existence of a policy, custom, or practice of the Board that violated E.W.'s rights, it will be recommended that the claims against the Board be dismissed.

In their amended complaint, plaintiffs name as a separate defendant the Wake County Public School System. In fact, though, the Wake County Public Schools is not a corporate entity subject to suit under North Carolina law. *Hunter v. Wake County Bd. of Educ.*, No. 5:08-CV-62-D, 2008 WL 2695813, *1 (E.D.N.C. 8 July 2008). Instead, the Board is the relevant corporate entity with the capacity under North Carolina law to sue and be sued. *See id.*; N.C. Gen. Stat. § 115C-40. Although defendants did not move to dismiss Wake County Public School System, it would be anomalous to retain it as a defendant while dismissing the Board. It will therefore be recommended that the Wake County Public School System be dismissed as well.

## X.    CLAIMS OF E.W.'S PARENTS

In their final argument, defendants assert that the claims brought by the Williamses should be dismissed because they have failed to allege any facts that would entitle them to recover in their individual right. The court agrees.

27

It has been repeatedly held that "only the person toward whom the state action was directed, and not those incidentally affected may maintain a § 1983 claim." *Pittsley*, 927 F.2d at 8, 9 (1st Cir. 1991) (holding that parents could not maintain a § 1983 action in their own right on the basis of a police officer's actions toward their children where those actions were not directly aimed at the relationship between a parent and child); *see also Wofford*, 390 F.3d at 325 (holding that parents of public school student lacks sufficient interest in disciplinary detainment of student for questioning to give them right to advance notice of detainment); *Shaw v. Stroud*, 13 F.3d 791, 805 (4th Cir. 1994) (holding that the widow and children of a state trooper who was killed during an arrest had no claim for the loss of love and support under § 1983); *Baynard v. Lawson*, 76 F. Supp. 2d 688, 695 (E.D. Va. 1999) (holding that parents of student who was sexually abused by a teacher did not have an actionable § 1983 claim because parents' claim was for injury that was incidental to the constitutional injury suffered by their child); *Rodríguez- Oquendo v. Toledo-Dávila*, 39 F. Supp. 2d 127, 131-32 (D.P.R. 1999) (holding that "family members do not have an independent claim under § 1983 unless the constitutionally defective conduct or omission was directed at the family relationship"); *Willard v. City of Myrtle Beach, S.C.*, 728 F. Supp. 397, 404 (D.S.C. 1989) (holding that parents of a 17-year-old boy who was detained in jail cell for four hours after arrest did not have constitutional liberty interest in continued companionship and association with their son such that they could pursue a § 1983 claim in their own right); *C.H. ex rel. Z.H. v. Oliva*, 990 F. Supp. 341, 349 (D.N.J. 1997), *aff'd in part, vacated in part on other grounds* 226 F.3d at 201-202 (holding that the mother of an elementary school student had no standing, in her individual capacity, to proceed with § 1983 suit because the action involved alleged violation of students' First Amendment right to freedom of expression not mother's). "Incidental injury is that injury where the offending conduct

28

is directed toward the children themselves and not the parent-child relationship." *Baynard*, 76 F. Supp. 2d at 694.

Here, the claims and injuries alleged in the complaint relate solely to conduct directed at E.W. (*See* Am. Compl., *e.g.*, ¶¶ 94, 95, 123, 125). The Williamses have not alleged any injury suffered directly by them. The court therefore concludes that they lack standing to bring any of the § 1983 claims on their own behalf. Accordingly, it will be recommended that any claims brought by the Williamses on their own behalf be dismissed.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that defendants' motion to dismiss (D.E. 23) be GRANTED IN PART and DENIED IN PART. Specifically, it is recommended that the following claims be DISMISSED WITH PREJUDICE:

1. the procedural due process claim under the Fourteenth Amendment;

2. the substantive due process claim under the Fourteenth Amendment;

3. the claim under the Fifth Amendment;

4. the claims against the individual defendants in their official capacities;

5. the claims against the Board and the Wake County Public School System; and

6. the claims by E.W.'s parents.

With these recommended dismissals, the only claims remaining would be:

1. the equal protection claim under the Fourteenth Amendment against Holley, Nathison, and Scott, the only remaining defendants implicated by this claim, in their individual capacities;

29

2.    the Fourth Amendment claim based on the continued detention of E.W. in the in-school suspension room after he completed his written statement against Scott and Nathison, the only remaining defendants implicated by this claim, in their individual capacities; and

3.    the Fourth Amendment claim based on the search of E.W.'s belongings against Bricker, the only remaining defendant implicated by this claim, in her individual capacity.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days, or such other period as the court specifies, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

SO ORDERED, this 16th day of February, 2010.


James E. Gates
United States Magistrate Judge