IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CV-198-FL

E.W., a minor child, by BOBBY WILLIAMS and LUCY WILLIAMS, his Parents, and his Next Friends, and individually,

Plaintiffs,

v.

WAKE COUNTY BOARD OF EDUCATION; WAKE COUNTY PUBLIC SCHOOL SYSTEM; DR. ADELPHOS JOHN (DEL) BURNS, SUPERINTENDENT, in his official capacity and individually; MARK WILLIAM HOLLEY, PRINCIPAL OF FUQUAY-VARINA MIDDLE SCHOOL, in his official capacity and individually; MAX NATHISON, Assistant Principal, in his official capacity and individually; CASSIE BRICKER, TEACHER, in her official capacity and individually; and KENDRICK SCOTT, Security Investigator for Wake County Public Schools, in his official capacity and individually,

Defendants.

ORDER

This matter comes before the court on motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) of defendants Wake County Board of Education, Wake County Public School System, Dr. Adelphos John (Del) Burns, Mark William Holley, Max Nathison, Cassie Bricker, and Kendrick Scott (collectively "defendants") (DE # 23), and with benefit of a magistrate judge's prior review.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge James E. Gates issued memorandum and recommendation ("M&R") (DE # 30), to which plaintiffs and defendants separately object (DE ## 31, 32). Issues raised are ripe for ruling. For the reasons that follow, defendants' motion is allowed in part and denied in part.

## BACKGROUND

Plaintiffs brought this action on May 4, 2009, asserting claims under 42 U.S.C. § 1983 for alleged violations of E.W.'s rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. These claims arise from a search of E.W.'s belongings and his suspension by the Fuquay-Varina Middle School for fighting on a school bus.

After defendants were granted an extension of time to respond, defendants filed their motion to dismiss on June 22, 2009. On July 10, 2009, the court granted defendants' motion to stay discovery pending resolution of the pending motion to dismiss. On August 5, 2009, the motion to dismiss was referred to Judge Gates.

M&R issued on February 26, 2010, recommends that defendants' motion to dismiss be granted in part and denied in part. Specifically, the judge recommends that the following claims be dismissed with prejudice: the procedural due process claim under the Fourteenth Amendment; the substantive due process claim under the Fourteenth Amendment; the claim under the Fifth Amendment; the claims against the individual defendants in their official capacities; the claims against the Board and the Wake County Public School System; and the claims by E.W.'s parents. The magistrate judge recommends that the following claims be allowed to continue: the equal protection claim under the Fourteenth Amendment against defendants Holley, Nathison, and Scott, in their individual capacities; the Fourth Amendment claim based

on the continued detention of E.W. in the in-school suspension room after he completed his written statement against defendants Scott and Nathison, in their individual capacities; and the Fourth Amendment claim based on the search of E.W.'s belongings against defendant Bricker, in her individual capacity. Each party filed objections to the M&R, which are detailed more particularly below.

## DISCUSSION

The M&R contains a thorough and extensive recitation of facts relevant to defendants' motion, to which the parties do not object.[1] Accordingly, the court adopts the magistrate judge's statement of the facts as its own, and now turns to the parties' legal objections. In addressing the parties' objections to the M&R, the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.; see Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983).

### A. Standard Of Review

A federal district court considering a motion to dismiss for failure to state a claim must view the allegations of the claim in the light most favorable to the non-moving party. See Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, the complaint must contain "sufficient

[1] Plaintiffs do request that the court "make a *de novo* determination of the findings and conclusions of the Magistrate Judge's Recommendations to grant Defendants' Motion to Dismiss several of Plaintiffs' claims," but only specifically object to the magistrate judge's conclusions, not his findings of fact. Similarly, defendants only object to the magistrate judge's conclusions. Neither party's recitation of the facts differs in substance from the magistrate judge's, and their objections do not turn on any factual dispute. As such, the court shall review only the legal conclusions specifically objected to *de novo*.

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The plausibility standard is met where "the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the [conduct] alleged.'" Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949). Furthermore, the complaint need not set forth "detailed factual allegations," but instead must simply "plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'" Nemet, 591 F.3d at 256 (quoting Iqbal, 129 S. Ct. at 1949-50). In evaluating the factual content necessary to survive a motion to dismiss, however, the court does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Id. at 255 (citing Iqbal, 129 S. Ct. at 1949, 1951-52; Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009)) (internal quotation marks omitted).

"At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will 'be a context-specific task . . . .'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1950). If the properly considered factual allegations, viewed in context, fail to "nudge[] . . . claims across the line from conceivable to plausible, the[] complaint must be dismissed." Twombly, 550 U.S. at 570. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of th[at] line . . . ." Iqbal, 129 S. Ct. at 1949 (internal quotation marks omitted).

B.   Plaintiffs' Objections

For reasons explained more fully below, each of plaintiffs' four objections to the M&R, treated in turn, is overruled.

1. Plaintiffs' Procedural Due Process Claim Under The Fourteenth Amendment

Plaintiffs object to the magistrate judge's conclusion that "E.W. was given more than minimal due process due." (Pls.' Obj. at 11.) Generally, plaintiffs object to the conclusion that E.W. was provided with proper notice and a proper pre-deprivation hearing before E.W.'s suspension went into effect. Defendant Nathison's phone call and written letter to Bobby Williams were not, plaintiffs argue, proper, effective notice of the charges against E.W. Plaintiffs argue that the phone call and letter did not provide E.W. or his parents with notice of what he was being accused or the basis for the accusation. Additionally, plaintiffs argue that the detention of E.W., during which he provided school officials with his version of the fight, was not the equivalent of a pre-deprivation hearing. Finally, plaintiffs argue that the policy adopted by the Board does not establish due process procedures consistent with those required in Goss v. Lopez, 419 U.S. 565 (1975).

As a general matter, courts will afford school officials "substantial leeway to depart from the prohibitions and procedures that the Constitution provides for society at large," particularly "when school discipline is involved." Wofford v. Evans, 390 F.3d 318, 323 (4th Cir. 2004). "Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story. The Clause requires at least these rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school." Goss, 419 U.S. at

581. These "rudimentary precautions" need not be more than an informal discussion of the "alleged misconduct with the student after it has occurred." Id. at 582 (emphasis added). This standard requires only that "the student first be told what he is accused of doing and what the basis of the accusation is." Id.

The "notice and hearing" should generally precede any suspension, but "[s]tudents whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school." Id. "There need be no delay between the time 'notice' is given and the time of the hearing. In the great majority of cases the disciplinarian may informally discuss the alleged misconduct with the student minutes after it has occurred." Id.

In this case, the allegations in plaintiffs' complaint show that E.W. was afforded the notice and hearing required to comply with procedural due process by the Supreme Court in Goss. The phone call from defendant Nathison to plaintiffs on the day of the fight to "let Bobby Williams know that [the] bus driver had reported the fight, and that an investigation would begin the next day to determine what happened" was sufficient notice. (Am. Comp. ¶ 31.) Defendant Nathison informed Mr. Williams what E.W. was being accused of and the basis for the accusation. Furthermore, the day after calling Bobby Williams, school officials provided him with a letter stating that the action being taken against E.W. was based on his violation of a specified Board policy on assault.

E.W. was also provided with a proper hearing. The following morning, E.W. was allowed to present his version of the events to school officials, both orally and in writing. Plaintiffs argue that E.W. did not receive a meaningful opportunity to present his version of the events because the school officials involved told him he was not free to leave the main office and then the in-school suspension room until he

gave his statements. The school officials' action, however, was only a response to E.W.'s refusal to answer their questions and his statement that he intended to leave and return to class. The complaint shows that the school officials may have also been reasonably motivated by E.W.'s father's prior statements undermining their authority.

Additionally, because E.W. did receive the due process required by Goss, plaintiffs' argument that the Board failed to adopt a policy providing for notice and hearing before a suspension of up to ten (10) days is overruled. Goss explicitly requires only "rudimentary" hearing procedures before a suspension of up to ten (10) days is imposed. Goss, 419 U.S. at 581-82. E.W. was provided with the chance to explain his version of the events, as explained above and in the M&R. For all these reasons, plaintiffs' objection is overruled.

2. Plaintiffs' Claims Against Defendants In Their Official Capacities

Plaintiffs object to the recommendation that all claims against defendants in their official capacities be dismissed as duplicative. According to plaintiffs, if the claims against the Board and the Wake County Public School System are dismissed, claims against the individual defendants in their official capacities cannot then be dismissed as "duplicative."

Plaintiffs' objection is overruled. The court agrees with the magistrate judge: the claims against defendants in their official capacities are retreads of the claims against the Board and the Wake County Public School System. See Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against [the Superintendent] in his official capacity . . . is essentially a claim against the Board and thus should be dismissed as duplicative." (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985))). As such, the court will address the substantive merits of said claims below.

3. Plaintiffs' Claims Against The Board And The Wake County Public School System[2]

Plaintiffs argue that claims against the Board and Wake County should go forward because they were aware of constitutional violations and condoned such actions. Specifically, plaintiffs argue the Board was aware of a policy that deprives students of meaningful procedural due process before a ten-day suspension is imposed.

The Board may be held liable for injuries caused by a policy, custom, or practice established or approved by the Board. Walker v. Prince George's County, Md., 575 F.3d 426, 431 (4th Cir. 2009); C.H. ex rel. Z.H. v. Oliva, 226 F.3d 198, 202 (3d Cir. 2000). To survive a motion to dismiss, plaintiffs must show the existence of a policy, custom, or practice established or approved by the Board that caused the harm plaintiffs allegedly suffered. Walker, 575 F.3d at 431.

Here, plaintiffs charge that the Board's policy for providing notice and hearing procedures is unconstitutional, under the same theories discussed in section B.1 above. In particular, the complaint alleges the Board's "failure . . . to promulgate policies for a due process hearing prior to a ten-day suspension involves a reckless disregard for and a callous indifference to the federally protected rights of all students who attend schools in Wake County Public School System, which is a clearly established constitutional right established by the Fourteenth Amendment of the U.S. Constitution, especially in light of the United States Supreme Court ruling in Goss v. Lopez, 419 U.S. 565 (1975)." (Am. Compl. 109.)

---

[2] Plaintiffs' objection is titled as appears in this heading, but plaintiffs do not make any substantive argument against the magistrate judge's recommendation that Wake County Public Schools be dismissed. In any case, Wake County Public Schools is not a corporate entity subject to suit under North Carolina law, and is hereby dismissed from this action. See Hunter v. Wake County Bd. of Educ., No. 5:08-cv-62-D, 2008 WL 2695813, at *1 (E.D.N.C. July 8, 2008); N.C. Gen. Stat. § 115C-40.

However, Goss requires only "rudimentary" hearing procedures," which can include an informal discussion of the alleged misconduct with the student. Goss, 419 U.S. at 582. It does not require a school board to adopt any particular policy guaranteeing a formal hearing before a ten-day suspension. Plaintiffs' argument rests upon the assumption that these notice and hearing procedures are constitutionally deficient. As detailed above, however, E.W. was in fact provided with due process before his ten-day suspension. Moreover, as explained by the magistrate judge, Board Policy 6530.2 does provide notice and hearing procedures consistent with those required by Goss. (See M&R at 15-16, n.4.) Because E.W. was provided with due process and the procedures adopted by the Board do, in fact, provide the constitutionally required protections, plaintiffs' objection is overruled.

4. Plaintiffs' Fourth Amendment Claim Based On The Initial Detention Of E.W.

Though the magistrate judge recommends allowing plaintiffs' Fourth Amendment claim based on E.W.'s detention in the main office to proceed, plaintiffs object to the magistrate judge's conclusion that the detention was "clearly justified at its inception." (M&R at 21.) Plaintiffs base this objection on the lack of a "reasonable basis to believe that E.W. had violated school policies by participating in the school bus fight the day before." (Pls.' Obj. at 20-21.) The school bus fight was reported by the bus driver, yet plaintiffs argue that "there are no allegations . . . that the bus driver was an eyewitness." (Pls.' Obj. at 20.)

Searches and seizures of students conducted by school officials are subject to a lesser degree of procedural scrutiny than searches and seizures of other citizens. Wofford, 390 F.3d at 326. A seizure of a student need only be "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." Id. (citing New Jersey v. T.L.O., 469 U.S. 325, 341

(1985) (quoting Terry v. Ohio, 392 U.S. 1, 20 (1968)). "[A] school official may detain a student if there is a reasonable basis for believing that the pupil has violated the law or a school rule." Id. (quoting T.L.O., 469 U.S. at 341-42). This relaxed standard is necessary to respect the interests that "educators have in 'maintaining security and order in schools.'" Id. (quoting T.L.O., 469 U.S. at 340).

Plaintiffs' objection is without merit. It strains credulity to believe that the bus driver did not witness, in some way, the fight on the school bus. S.M. threw a book bag at E.W.'s face and a number of punches were exchanged. The school bus driver stopped the bus and ordered S.M. to exit. Moreover, the driver noticed emergency medical services at the location where he had ordered S.M. off the bus. As E.W. exited the bus, the bus driver told him he may get into trouble for the fight. At the very least, the school bus driver's account of the fight provided school officials with the requisite "reasonable basis" to believe that E.W. violated school policies by participating in such a fight. See Wofford, 390 F.3d at 326 (finding that classmates' allegations constituted a reasonable basis for believing a student had violated school policies).

In their objections, plaintiffs argue this claim should not be dismissed because defendant Scott's role can only be determined through discovery. As defendants point out, plaintiffs' amended complaint contains no allegations that defendant Scott is or might be a member of law enforcement. The amended complaint alleges only that defendant Nathison retrieved E.W. from class and escorted him to the school's main office, where he was questioned by defendants Nathison, Haywood, and Scott, "the Security Investigator for Wake County Public Schools." (Am. Compl. ¶ 33.) There is no allegation that defendant

Scott acted differently than the other defendants or that his conduct should be held to a different standard.[3] Indeed, after Bobby Williams was notified that an investigation would begin to determine what happened during the school bus fight, defendant Scott acted reasonably in his role as security investigator for the school. Thus, for these reasons and those already explained, plaintiffs' objection is overruled.

C. Defendants' Objections

Defendants lodge three objections to the M&R. For reasons that follow, defendants' first and third objections are overruled. Defendants' second objection is, however, sustained.

1. Plaintiffs' Equal Protection Claim

Defendants object to the magistrate judge's recommendation that plaintiffs' equal protection claim be allowed to go forward because it "does not account for facts alleged by E.W. himself that establish defendants' rational basis for his suspension." (Defs.' Obj. at 5.) Defendants argue that E.W.'s written statement, which was the only evidence offered against E.W., justified his suspension and dictated a finding that E.W. had violated school board policy and that he had not been acting in self defense.

E.W.'s equal protection claim is subject to rational basis review. See Giarratano v. Johnson, 521 F.3d 298, 302-03 (4th Cir. 2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). "To survive a motion to dismiss for failure to state [an equal protection claim], a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." Giarratano, 521 F.3d at 304, 305 (quoting Wroblewski v. City of Washburn, 965 F.2d 452, 460 (7th Cir. 1992))

---

[3] Even if defendant Scott were acting in his role as a police officer, as plaintiffs seem to suggest in their objections, the initial detention of E.W. for the school bus fight was lawful. See Wofford, 390 F.3d at 327 ("[W]hen school officials constitutionally seize a student for suspected criminal activity and transmit the basis for their suspicion to the police, any continued detention of the pupil by the police is necessarily justified in its incipience.").

(upholding dismissal of an equal protection claim where the plaintiff "failed to allege any set of facts that would indicate the classification at issue violated any fundamental rights, was irrational, or otherwise failed to serve a legitimate state interest").

The court agrees with the magistrate judge. The facts in plaintiffs' complaint show that S.M. started the fight on the school bus and that E.W. only defended himself. E.W. also alleges that S.M.'s injuries were accidentally caused when E.W. did not realize he had his tuba mouthpiece in his hand. Moreover, S.M. was charged with assault and battery, while E.W. was classified as a victim of the assault and was not separately charged himself. Plaintiffs allege that the disparate treatment accorded to E.W. and S.M. was motivated by intentional discrimination in retaliation for E.W. having confronted the principal about the search of E.W.'s belongings. Plaintiffs are not, as defendants seem to argue, required to show that there were no rational bases for levying a more severe punishment on E.W. Rather, to survive a motion to dismiss, plaintiffs need to show there is a plausible, irrational basis for such punishment. See Giarratano, 521 F.3d at 305. Whether defendants' actions were in fact rational is a question better decided on summary judgment or at trial.

In short, plaintiffs have gone further than merely asserting irrationality; they have alleged facts that could support an irrational classification and have thus pleaded a *prima facie* claim for violation of the Equal Protection Clause. Accordingly, defendants' objection is overruled.

2. Plaintiffs' Fourth Amendment Claim Based On The Continued Detention Of E.W.

Defendants argue that placing E.W. in the in-school suspension classroom was not unreasonable given the investigation of the school bus fight, and thus E.W.'s right against unreasonable seizure was not violated. Defendants argue that the decision to place E.W. in in-school suspension during the investigation

falls within the "substantial leeway" given to school administrators in disciplinary matters. See Wofford, 390 F.3d at 323.

As stated above, "a school official may detain a student if there is a reasonable basis for believing that the pupil has violated the law or a school rule." Id. at 326 (quoting T.L.O., 469 U.S. at 341-42). The detention must be justified at its inception and "'reasonably related in scope to the circumstances which justified [it] in the first place.'" Id. at 326 (citing T.L.O., 469 U.S. at 341) (quoting Terry, 392 U.S. at 20). Courts will afford school officials "substantial leeway to depart from the prohibitions and procedures that the Constitution provides for society at large," particularly "when school discipline is involved." Wofford, 390 F.3d at 323. Each case, and the reasonableness of the actions taken by school officials, turns on its particular facts. In addressing the reasonableness of a seizure in a public school context, a court must account for the school's custodial responsibility for children in deciding what is appropriate treatment. See, e.g., Shuman v. Penn Manor Sch. Dist., 422 F.3d 141, 149 (3d Cir. 2005) ("[O]nce under the control of the school, students' movement and location are subject to the ordering and direction of teachers and administrators." (internal quotation omitted)).

In essence, this claim fails because defendants acted reasonably under the circumstances. During the approximately two hours that E.W. was in the in-school suspension room, defendant Nathison called Bobby Williams and asked him to come to the school. Once Bobby Williams arrived, defendant Nathison informed him that E.W. was being suspended for ten (10) days and recommended a long-term suspension for the remainder of the school year. E.W. was not a young child being interrogated by law enforcement. See Wofford, 390 F.3d at 323-27. He was not held in an abnormal location, or for a relatively long period of time. See Shuman, 422 F.3d at 151 (holding no seizure rights were violated when a student was

detained for an important purpose for as little as four hours) Valentino C. v. Sch. Dist. of Philadelphia, No. Civ. A. 01-2097, 2003 WL 177210, at *3-*6 (E.D. Pa. Jan. 23, 2003) (holding no seizure rights were violated when a child was held for twenty-one (21) hours at a police station without being given his medication). Nor was he bound in any way. See Doe v. Hawaii Dept. of Educ., 334 F.3d 906, 909-910 (9th Cir. 2003) (holding seizure rights were violated when a school official taped a second-grade boy to a tree); Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1306-07 (holding that handcuffing a student was not reasonably related to the scope of the circumstances that initially justified the seizure).

Disciplinary actions taken by school officials are afforded substantial leeway by the judiciary. The judgments of officials who deal with students every day should not be disturbed unless the actions taken by officials are unreasonable or abnormal. Keeping a student suspected of fighting in a room while he writes his statement and while the principal calls the student's father is not unreasonable. To force school officials, via mandate from federal court, to attend so closely to a student's right against seizure in such a situation injects courts into the everyday disciplinary decision making of school officials. Forcing school officials in defendants' situation to immediately return a student suspected of fighting to class after writing a statement would focus too much of the officials' attention on potential litigation consequences, instead of on security and disciplinary interests.

Every detention of a student by school officials cannot form the basis for a lawsuit. Educators should not be forced to choose between "abandoning their preferred method of discipline altogether or complying with burdensome procedures decreed by federal courts." Wofford, 390 F.3d at 323. "[T]he balance of rights and interests to be struck in the disciplinary process is a task best left to local school systems, operating, as they do, within the parameters of state law." Id. at 324 (citing Hazelwood Sch. Dist.

v. Kuhlmeier, 484 U.S. 260, 273 (1988)). As such, defendants' objection is sustained and the Fourth Amendment claim based on E.W.'s detention is dismissed in its entirety.

3. Plaintiffs' Fourth Amendment Claim Based On The Search Of E.W.'s Belongings

Defendant Bricker objects to the magistrate judge's conclusion that E.W. alleged state action when defendant Bricker allowed students to search E.W.'s belongings. Defendant Bricker argues that E.W. only alleged that defendant Bricker allowed, rather than directed or encouraged, private actors to search E.W.'s belongings. This mere acquiescence, defendants assert, is not sufficient to convert private action into state action. Blum v. Yaretsky, 457 U.S. 991, 1004-05 (1982); David v. Mosley, 915 F. Supp. 776, 789 (1996), aff'd, 103 F.3d 117 (4th Cir. 1996).

When a state actor provides "significant encouragement" in the implementation of some action taken by a private actor, the state actor is responsible for that action. E.g., Blum, 457 U.S. at 1004. But, when a state actor merely acquiesces in private action, it is not converted into state action. Thus, whether defendant Bricker is responsible for the search of E.W.'s belongings depends upon whether she significantly encouraged the action, or whether she merely acquiesced in it.

The court agrees with the magistrate judge. Of course, the complaint does allege that defendant Bricker "allowed students in E.W.'s class to search his book bag, binder, and jacket." (Am. Compl. ¶ 12.) The amended complaint further states that when asked who gave the students authority to search, defendant Bricker responded that "the students were E.W.'s friends." (Am. Compl. ¶ 12.) Defendants are correct that without significant encouragement on defendant Bricker's part, only allowing a search of E.W.'s belongings does not convert private action into state action. This search, however, took place after defendant Bricker accused E.W. of stealing her notepad. It stands to reason that the search was directed

by defendant Bricker, or was at least significantly encouraged by her. The search appears to be directly related to the accusation that E.W. stole defendant Bricker's notepad. Indeed, it seems implausible that defendant Bricker merely "allowed" the search without in some sense encouraging or directing it.

Whether any encouragement was "significant" is a question better resolved with the benefit of discovery. Read in the light most favorable to plaintiffs, and taking all inferences in plaintiffs' favor, plaintiffs have stated a plausible claim to relief based on the search. Defendants' objection is overruled.

## CONCLUSION

After careful consideration on motion to dismiss, and for the reasons herein stated, the court agrees with and makes its own the magistrate judge's findings and recommendations in all but one respect, where all of plaintiffs' objections are overruled, as are defendants', with the exception of defendants' objection to the magistrate judge's recommendation concerning plaintiffs' Fourth Amendment claim of or relating to continued detention of E.W. On the motion now before it (DE # 23), directed against the amended complaint (DE # 2), where said motion is allowed in part and denied in part, it is ORDERED that:

1) all claims against the Wake County Board of Education and the Wake County Public School System are DISMISSED WITH PREJUDICE;

2) all claims against the individual defendants, in their official capacities, are DISMISSED WITH PREJUDICE;

3) all claims by E.W.'s parents, Bobby Williams and Lucy Williams, brought individually, are DISMISSED WITH PREJUDICE; and turning more particularly to plaintiffs' claims against remaining defendants, Dr. Adelphos John (Del) Burns, Mark William Holley, Max Nathison, Cassie Bricker, and Kendrick Scott;

4) the procedural due process claim under the Fourteenth Amendment, as stated against any of these defendants (Plaintiff's First Claim For Relief), is DISMISSED WITH PREJUDICE;

5) the substantive due process claim under the Fourteenth Amendment, as stated against any of these defendants (Plaintiff's Second Claim For Relief), is DISMISSED WITH PREJUDICE;

6) the equal protection claim under the Fourteenth Amendment against defendants Mark William Holley, Max Nathison, and Kendrick Scott, in their individual capacities (Plaintiffs' Third Claim For Relief) remains, where defendants' motion to dismiss is DENIED in this part;

7) the Fourth Amendment claim based on the continued detention of E.W. in the in-school suspension room after he completed his written statement against defendants Kendrick Scott and Max Nathison, in their individual capacities (Plaintiffs' Fourth Claim For Relief) is DISMISSED WITH PREJUDICE;

8) the Fourth Amendment claim based on the search of E.W.'s belongings against defendant Cassie Bricker, the only remaining defendant implicated by this claim, in her individual capacity (Plaintiffs' Fourth Claim For Relief) remains, where defendants' motion to dismiss is DENIED in this part; and

9) the claim under the Fifth Amendment as variously stated (Plaintiffs' Fourth and Fifth Claims For Relief) is DISMISSED WITH PREJUDICE.

It is further ORDERED that the court's stay of discovery remains in force and effect, pending the making of their answer by remaining defendants to the claims remaining. Said defendants shall answer the amended complaint within fourteen (14) days from date of entry of this order. Upon filing and service of same, the stay automatically is LIFTED, and requirements set forth in the court's initial order regarding planning and scheduling, entered July 1, 2009, are RENEWED. Unless any party requests scheduling

conference in advance of the court's entry of its case management order, the court dispenses with requirement for any conference. Except as amended, the terms and conditions of the court's initial order addressing the parties' obligations pursuant to Federal Rule of Civil Procedure 26(f) remain in force and effect. Upon receipt and review of the parties' joint report, unless good cause therein is shown why at this juncture a scheduling conference also should be held, the court promptly will enter a comprehensive plan for continued case management.

SO ORDERED, this the 30th day of March, 2010.

LOUISE W. FLANAGAN
Chief United States District Court Judge