IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CV-198-FL

| | |
|---|---|
| E.W., a minor child, by BOBBY WILLIAMS and LUCY WILLIAMS, his Parents, and his Next Friends, and individually, <br><br> Plaintiffs, <br><br> v. <br><br> WAKE COUNTY BOARD OF EDUCATION; WAKE COUNTY PUBLIC SCHOOL SYSTEM; DR. ADELPHOS JOHN (DEL) BURNS, SUPERINTENDENT, in his official capacity and individually; MARK WILLIAM HOLLEY, PRINCIPAL OF FUQUAY-VARINA MIDDLE SCHOOL, in his official capacity and individually; MAX NATHISON, Assistant Principal, in his official capacity and individually; CASSIE BRICKER, TEACHER, in her official capacity and individually; and KENDRICK SCOTT, Security Investigator for Wake County Public Schools, in his official capacity and individually, <br><br> Defendants. | ORDER |

This matter comes before the court on defendants' motion for summary judgment (DE #50), which has been fully briefed. In this posture, the issues raised are ripe for review. For the reasons that follow, defendants' motion for summary judgment is GRANTED.

STATEMENT OF THE CASE

Plaintiffs, a minor child ("E.W.") and his parents, initiated this action on May 4, 2009, and filed their verified amended complaint on May 5, 2009. Plaintiffs assert claims under 42 U.S.C. §

1983 for alleged violations of E.W.'s rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. The claims arise out of various incidents that took place at the Fuquay-Varina Middle School ("the Middle School"), where E.W. was a student.

On June 22, 2009, defendants filed a motion to dismiss. On March 30, 2010, the court issued an order granting in part and denying in part defendants' motion to dismiss. Specifically, the court dismissed with prejudice all claims against the Wake County Board of Education ("the Board of Education") and the Wake County Public School System ("the School System"). Further, all claims against the individual defendants, in their official capacities, were dismissed with prejudice. Further, all claims by E.W.'s parents, brought individually, were dismissed with prejudice.[1] As to the remaining defendants in their individual capacities, the court dismissed with prejudice all of plaintiffs' claims except plaintiff's equal protection claim under the Fourteenth Amendment (Plaintiffs' Third Claim for Relief) as against defendants Mark William Holley ("Holley"), Max Nathison ("Nathison"), and Kendrick Scott ("Scott"), and plaintiffs' Fourth Amendment claim (Plaintiffs' Fourth Claim for Relief) against defendant Cassie Bricker ("Bricker").

On December 28, 2010, the remaining defendants Bricker, Holley, Nathison, and Scott filed the instant motion for summary judgment, which has been fully briefed.

The matter is currently set for a jury trial to commence August 15, 2011.

STATEMENT OF THE UNDISPUTED FACTS

The two remaining constitutional claims arise out of two separate incidents. At all relevant times, plaintiff E.W. was an eighth grade student at the Middle School. (Answer, ¶ 4)

A.   The Search Incident in Bricker's Classroom

---

[1] Accordingly, "plaintiff" shall hereinafter be understood to refer only to E.W.

2

E.W.'s Fourth Amendment claim arises out of an incident that occurred at the Middle School on January 4, 2008. On that date, E.W. was in attendance in Bricker's science class. (Defs. Mem. in Supp., Ex. 1, ¶ 4) ("Bricker Aff."). E.W.'s assigned desk was towards the back of the classroom, and was the closest student desk to Bricker's desk. (Id.) At some point towards the end of the class period, Bricker noticed that a distinctive pad of sticky notes was missing from her desk. (Id., ¶ 6) Bricker had noticed E.W. near her desk earlier in the class period. (Id., ¶ 5) Bricker therefore asked E.W. and two other students whether any of them had taken anything from Bricker's desk. (Id., ¶ 7)

E.W. denied having taken the note pad from Bricker's desk. (Defs. Mem. in Supp., Ex. 2, p. 16) ("E.W. Depo.") Further, E.W. said something to the effect of "You can search me!" (Id., p. 17) (Bricker Aff., ¶ 8) E.W. then emptied his pockets in front of the classroom. (E.W. Depo, p. 19) Two other students in the classroom, B.R. and D.G., then began to search through E.W.'s belongings. (Id., p. 17) B.R. looked through E.W.'s school binder, while D.G. examined E.W.'s jacket, which was on E.W.'s chair. (Id., 18-19) E.W. later testified that when he said that Bricker could search him, he did not anticipate being searched by fellow students; rather, he expected Bricker to bring a law enforcement officer into the classroom to conduct the search. (Id., p. 22)

Bricker did not participate in the search of E.W.'s belongings; rather, she just watched. (Id., p. 19) E.W. testified that Bricker said nothing during the search. (Id., p. 23) Bricker later stated that she instructed students in the room not to search E.W., but did see another student looking through E.W.'s binder. (Bricker Aff., ¶ 8) Bricker further stated that she has never directed students to search another student. (Id., ¶ 12)

Immediately after the search, E.W.'s father ("Williams") received a phone call regarding the events that took place in Bricker's classroom. (Defs. Mem. in Supp., Ex. 3, p. 30) ("Williams

3

Depo.") During the phone call, Williams spoke to both E.W. and Bricker. (Id.) Williams asked Bricker "what did you do to stop it?", referring to the search. (Id., p. 66) According to Williams, Bricker responded that she did "nothing, because they were his - that was his friends." (Id., p. 67) Williams further testified that "whether she authorized [the search], we do not know." (Id.)

After the phone call, Williams went to the Middle School and spoke with Holley, the school principal. (Id., p. 32) Shortly after the incident, Holley contacted Scott, a security investigator for the Board of Education, who conducted an investigation of the incident and generated a report. (Defs. Mem. in Supp., Ex. 4, ¶ 5) ("Scott Aff.")

As part of his investigation, Scott interviewed B.R. and D.G., the students who searched E.W.'s belongings. (Scott Aff., ¶ 6) B.R. stated that after Bricker asked E.W. whether he had taken the note pad, that E.W. denied having taken it and said "you can search me, you can search me." (Id., Ex. A, p. 1) At that point, B.R. and D.G. began to look through the binder and jacket, and further that E.W. put his arms in the air while B.R. "patted him down." (Id., p. 1-2) Asked how he would describe the incident, B.R. stated that "we were just playing around." (Id., p. 1) D.G.'s statement was substantially similar, and she further explained that "we just did it to show that he didn't have the post-it notes." (Id., p. 2) The students further explained that Bricker merely asked E.W. whether he had taken the note pad from her desk, and did not accuse him of theft. (Id.)

Scott also spoke with E.W.'s parents during the course of his investigation. (Id.) When Williams was informed of the students' account of the incident, Williams asserted that the Middle School and Scott were not placing the blame in the "correct place," and that the "teacher was responsible for allowing a search of their son." (Id.) Williams further stated that he wanted Bricker fired. (Id.)

4

As a result of the incident, Williams requested that E.W. be removed from Bricker's class. (Defs. Mem. in Supp., Ex. 5, ¶ 6) ("Holley Aff.") Holley did not believe that the incident warranted removing E.W. from Bricker's class, but nonetheless agreed to switch E.W. out of Bricker's class, which required changing E.W.'s "team" assignment, meaning that E.W. was moved to a different student grouping with a different set of teachers. (Id., ¶¶ 5-7) E.W. was moved to a different team on January 14, 2008. (E.W. Depo, p. 61)

B.    The Fight on the School Bus

Plaintiff's equal protection claim arises out of an incident on the school bus which ultimately led to plaintiff's suspension from school.

On January 29, 2008, on the bus ride home from school, E.W. got into a physical fight with S.M., who was a seventh grade student at the Middle School. (Defs. Mem. in Supp., Ex. 6, ¶ 6) ("Nathison Aff.") That afternoon, after E.W. had taken his seat on the school bus, S.M. got onto the bus and sat down in the seat immediately in front of E.W. (E.W. Depo., p. 25)

At some point during the bus ride, S.M. started a fight by throwing his book bag, which was full of books, at E.W.'s face. (Id., p. 26) (Scott Aff., Ex. B) S.M. then punched E.W. in the face three times, breaking E.W.'s glasses in half. (E.W. Depo., p. 26) S.M. then turned around and sat down in his seat. (Id., p. 28) Deciding at this point to defend himself, E.W. stood up and began to punch S.M. in the back of his shoulder. (Id., pp. 29-30) S.M. tried to cover himself by sloping down in the seat and placing his hands over his head. (Id., p. 31) S.M. did not turn around to face E.W. (Id.) E.W. punched S.M. six or seven times before other children on the bus broke up the fight. (Id., p. 32) Once the fight was broken up, E.W. punched S.M. one more time, striking S.M. in the back of the head. (Id.) At that point, E.W. realized that, during the whole fight, E.W. had been holding

5

his metal tuba mouthpiece in his hand. (Id.) When E.W. struck S.M. in the back of the head, the mouthpiece lacerated S.M.'s skin. (Id.)

Immediately thereafter, the bus driver instructed S.M. to get off the bus, and dropped him off at the Dollar General store. (Id., p. 34) Because S.M. was bleeding, an employee at the Dollar General store called 911, and the Wake County EMS was dispatched to the store. (Defs. Mem. in Supp., Ex. 8, p. 2) ("Police Report") Officer T.M. Smith ("Officer Smith") with the Fuquay-Varina Police Department was dispatched to the store, as well. (Id.) The paramedics determined that S.M. required stitches for the laceration on his head, and S.M. was transported to the hospital. (Id.)

Later that evening, Officer Smith went to E.W.'s home to interview E.W. (Id.) E.W.'s parents were present at the time of the interview. (Id.) During their conversation, Officer Smith observed injury to E.W.'s face, "particularly around the nose area which was bruised and a small amount of blood on the surface." (Id., p. 3) Officer Smith viewed the tuba mouthpiece that had been in E.W.'s hand during the assault, and noticed hair and blood inside of it. (Id.) Officer Smith took the mouthpiece as evidence. (Id.) Officer Smith's police report named S.M. as the victim of an assault with a deadly weapon committed by E.W., and named E.W. as the victim of a mere assault by S.M. (Id., p. 1)

The next morning, January 30, 2008, a meeting was held between S.M., his mother, and an administrator at the Middle School. (Nathison Aff., ¶ 8) Nathison, who was the Assistant Principal at the Middle School, also attended the meeting. (Id.) During the meeting, Nathison observed that S.M. had stitches near the crown of his head. (Id.) Holley separately observed S.M.'s stitches that morning, as well. (Holley Aff., ¶ 9)

Nathison, with the assistance of Scott, interviewed students, including E.W., regarding the fight on the school bus. (Holley Aff., ¶ 10) During the interview, E.W. admitted that he and S.M. had gotten into a fight on the bus, and that during the fight, E.W. hit S.M. in the head with the tuba mouthpiece. (Scott Aff., ¶ 8)

The Board of Education policy § 6425.1 ("Fighting Policy") provides that "no student shall engage in fighting or physical aggression towards others." (Holley Aff., Ex. A, p. 1) The Fighting Policy provides further that "a violation of this section *that does not involve serious physical injury* ... may result in short-term suspension. Repeated violations may result in a long-term suspension." (Id.) (emphasis added) Pursuant to the Fighting Policy, students were suspended for three days for the first violation, five days for the second violation, and were recommended for long-term suspension for the third violation. (Holley Aff., ¶ 14)

The Board of Education policy § 6425.2 ("Assault Policy") provides that "no student shall cause serious physical injury to any student." (Holley Aff., Ex. A, p. 1) The term "serious physical injury" is not defined in the policy. The Assault Policy provides further that "the first violation of § 6425.2 during a school year by a student in grades 6-12 shall result in long-term suspension from the school system for the remainder of the school year." (Id.)

Both the Fighting Policy and the Assault Policy contain an exception for self-defense ("self-defense exception"), which provides that "a student who is attacked may use reasonable force in self-defense, but only to the extent necessary to get free from the attack and notify proper school authorities." (Id.) The self-defense exception further provides that "a student who exceeds reasonable force may be disciplined even though someone else provoked the fight." (Id.)

7

After Nathison and Scott concluded their investigation into the school bus incident, Holley determined that S.M. had violated the Fighting Policy an not the Assault Policy, because S.M. had not caused any serious physical injury to E.W. (Holley Aff., ¶ 17) Holley accordingly suspended S.M. for five days, in accordance with the graduated discipline practice under the Fighting Policy. (Id.)

Nathison, who was responsible for student discipline for eighth graders, was responsible for determining E.W.'s punishment. (Nathison Aff., ¶ 3) Nathison determined that S.M. had sustained serious physical injury because S.M. suffered injuries requiring him to be transported to the hospital and to receive stitches. (Id., ¶ 13) Based on that determination, Nathison found E.W. to have violated the Assault Policy. (Id.) Had S.M. not required stitches, Nathison would have found E.W. to be in violation of the Fighting Policy, not the Assault Policy. (Id., ¶ 15)

Pursuant to the Assault Policy, Nathison was required to recommend that E.W. be suspended for the remainder of the school year. (Id., ¶ 13) Accordingly, Nathison recommended to Holley that E.W. be long-term suspended. (Id., ¶ 16) Holley agreed with Nathison that E.W. had caused a serious physical injury and therefore had violated the Assault Policy. (Holley Aff., ¶ 12) Therefore, Holley was required to suspend E.W. for the remainder of the school year. (Id., ¶ 13) E.W. appealed his suspension, and the panel at his school-based hearing concluded that E.W. had indeed violated the Assault Policy. (Id., ¶ 21) The Superintendent also upheld the long-term suspension, as did the Board of Education. (Id., ¶ 22)

## DISCUSSION

A.    Standard of Review

    1.    Summary Judgment Standard

8

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A fact is material only when its resolution affects the outcome of the case. Anderson, 477 U.S. at 248. A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. The mere existence of some alleged factual dispute between the parties will not defeat a motion for summary judgment. Id. at 247-48. In the summary judgment determination, the facts and all reasonable inferences must be viewed in the light most favorable to the non-moving party. Id. at 255.

2. § 1983 Standard

Section 1983 does not provide a "source of substantive rights," but rather a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Lambert v. Williams, 223 F.3d 257, 260 (4th Cir. 2000) (quoting Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979)). "To state a cause of action under § 1983, a plaintiff must allege facts indicating that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed

9

by a person acting under the color of state law." Morris v. Edmonds, No. 5:08-CV-239, 2008 WL 2891014, at *3 (E.D.N.C. 25 July 2008) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).

B.  Analysis

   1.  Plaintiff's Fourth Amendment Claim

Bricker argues that she is entitled to summary judgment on plaintiff's Fourth Amendment claim on the grounds that: (1) E.W. consented to be searched; (2) there is no evidence of state action; and (3) the search was reasonable under the circumstances. Alternatively, Bricker argues she is entitled to qualified immunity. Because the court concludes that there is no genuine issue of material fact as to the question of state action, it declines to address Bricker's other arguments.

In order to prevail on a § 1983 cause of action, a plaintiff must establish: (1) that he was deprived of a federal statutory or constitutional right; and (2) that the deprivation was committed under color of state law. Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (citing American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999)). The "under color of state law" element excludes merely private conduct from the reach of § 1983. American Mfrs., 526 U.S. at 50. State action exists only when it can be said that the state is responsible for the specific conduct about which the plaintiff complains. David v. Mosley, 915 F.Supp. 776, 789 (4th Cir. 1996), aff'd, 103 F.3d 117 (4th Cir. 1996). A state actor is responsible for the conduct of private parties only where he has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982); see also David, 915 F.Supp. at 789. The state's "mere acquiescence" in private action does not convert private action into state action. Id.

Bricker argues that she is entitled to summary judgment on plaintiff's Fourth Amendment claim because there is no evidence of state action. Specifically, she argues that there is no genuine issue of material fact as to whether Bricker's conduct constituted "significant encouragement" sufficient to transform the students' search of E.W. and his belongings into state action.

In previous order, the court denied Bricker's motion to dismiss based on the same argument. See E.W. v. Wake County Bd. of Educ., No. 5:09-CV-198-FL, 2010 WL 1286218, at *8-9 (E.D.N.C. March 30, 2010). In that order, the court held that plaintiff had sufficiently alleged state action where plaintiff alleged that Bricker accused E.W. of stealing her note pad, and then allowed students to search him. Id. The court acknowledged that, without significant encouragement by Bricker, the search by students would not constitute state action. Id., citing Blum, 457 U.S. at 1004. Ultimately, however, the court determined that "whether any encouragement [by Bricker] was 'significant' is a question better resolved with the benefit of discovery," and that read in the light most favorable to plaintiff, and taking all inferences in plaintiff's favor, plaintiff had stated a plausible claim to relief. Id.., at *9.

Now having benefit of discovery, it is clear that Bricker did not significantly encourage conduct of the students, but rather merely acquiesced in their behavior. E.W. testified that Bricker herself did not participate in the search, and that the search was conducted entirely by two of his classmates. (E.W. Depo., p. 17, 19) Further, E.W. testified that Bricker did not say anything during the search, encouraging the conduct or otherwise. (Id., p. 23)[2] Bricker stated that she has never

---

[2] The court notes that Bricker stated that she "told the other students in the room not to search him." (Bricker Aff., ¶ 8) Although the issue of whether Bricker said anything during the search is therefore disputed, the issue is not material. Whether Bricker said nothing at all, as E.W. testified, or whether Bricker affirmatively directed the students not to search E.W., as Bricker stated, neither scenario could conceivably be construed as "significant encouragement."

11

directed students to search another student. (Bricker Aff., ¶ 12) Williams himself testified that "whether [Bricker] authorized [the search], we do not know." (Williams Depo., p. 67)

Based on these facts, it is clear that Bricker did not significantly encourage the conduct of the students. Rather, Bricker merely acquiesced in their conduct. See U.S. v. Coleman, 628 F.2d 961, 965 (6th Cir.1980) (finding no state action where search was conducted by a private party and the police "did not instigate, encourage, or participate in the search"); see also David, 915 F.Supp. at 789 (granting summary judgment to defendant on grounds that there was no evidence of state action where plaintiff failed to offer evidence that state actor compelled private actor to search packages). Because Bricker's "mere acquiescence" in private conduct is not sufficient to convert private conduct into state action, see Blum, 457 U.S. at 1004, there is no state action, and Bricker is entitled to judgment as a matter of law on this claim.[3]

Because there is no genuine issue of material fact as to the question of state action, defendants' motion for summary judgment is GRANTED as to plaintiff's Fourth Amendment claim.

2. Plaintiff's Equal Protection Claim

Plaintiff alleges that Holley, Nathison, and Scott violated his rights under the Equal Protection Clause of the Fourteenth Amendment by imposing upon plaintiff more severe discipline than was imposed on S.M. following the fight on the school bus. Defendants Holley, Nathison, and Scott argue they are entitled to summary judgment on plaintiff's equal protection claim on the following grounds: (1) E.W. and S.M. were not similarly situated; (2) E.W. cannot negate any

---

[3] Plaintiff appears to argue that Bricker provided significant encouragement by accusing him of stealing her note pad. Plaintiff cites no legal support for his contention that an accusation of theft constitutes significant encouragement for others to conduct a search. Regardless, on these facts, it is clear that B.R. and D.G. conducted the search on their own initiative, and without any encouragement by Bricker.

12

reasonably conceivable state of facts that could provide a rational basis for the challenged action; and (3) the suspension decision was discretionary and not subject to challenge through a "class of one" equal protection claim. Alternatively, defendants argue they are entitled to qualified immunity. Because the court concludes that E.W. and S.M. were not similarly situated, the court declines to address defendants' alternative arguments.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV § 1. To state a claim under the Equal Protection Clause, a plaintiff must plead sufficient facts to "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Williams v. Hansen, 326 F.3d 569, 576 (4th Cir. 2003) (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)).

Once this showing is made, the court will determine whether the disparate treatment can be justified under the appropriate level of scrutiny. Morrison, 239 F.3d at 654; see also Hinton v. Conner, 366 F.Supp.2d 297, 313 (M.D.N.C. 2005). Where a person is treated differently based on membership in a suspect class or because of the exercise of a fundamental right, strict scrutiny applies. Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 312 (1976)). Absent a burden on the exercise of a fundamental right or disparate treatment of a member of a suspect class, rational basis review applies, and "the government need only show a reasonably conceivable state of facts that could provide a rational basis for the classification." Hinton, 366 F.Supp.2d at 313 (citing Bd. of Trs. v. Garrett, 531 U.S. 356, 367 (2001)).

13

In previous order, the court established that plaintiff's equal protection claim is subject to rational basis review. E.W., 2010 WL 1286218 at *6. Therefore, in order to prevail on his class-of-one equal protection claim, plaintiff must establish that: (1) he was intentionally treated differently from S.M., who was similarly situated; and (2) that there was no rational basis for the difference in treatment. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

In the same previous order, the court denied defendants' motion to dismiss plaintiff's equal protection claim, finding that plaintiff had alleged facts sufficient to show there was a plausible irrational basis for the disparate treatment; specifically, plaintiff alleged that the disparate treatment was motivated by intentional retaliatory discrimination for E.W. having confronted Holley about the search of E.W.'s belongings in Bricker's class. E.W., 2010 WL 1286218 at *6. It is important to note that in so ruling, the court merely determined that plaintiff had properly pleaded a *prima facie* equal protection claim; the court expressly did not rule that plaintiff had established that the disparate treatment was in fact irrational, noting instead that question would be more properly decided on summary judgment or at trial. Id.

    a.    E.W. and S.M. were not similarly situated

To prevail on his equal protection claim, the first element plaintiff must establish is that he and S.M. were similarly situated. See Village of Willowbrook, 528 U.S. at 564. Where differential treatment is not alleged to have resulted from plaintiff's membership in a protected class, as here, a showing of an "extremely high degree of similarity" is required. See Versatile v. Vaughn, No. 3:05-CV-768, 2009 WL 7051695, at *7 (E.D.Va. Feb. 23, 2009) (citing Willis v. Town of Marshall, N.C., 275 F.App'x 227, 233 (4th Cir. 2008)). Plaintiff has failed to proffer sufficient evidence for a reasonable jury to find that he was similarly situated to S.M.

14

It is undisputed that, during the school bus fight, E.W. caused serious injury to S.M. that ultimately required hospitalization and stitches. When S.M. arrived at the Dollar General store after being let off the school bus, he was in such a condition that the store employee thought it necessary to call 911. (Police Report) The paramedics, after arriving, determined that the laceration, caused by E.W.'s blow with a metal instrument mouthpiece, was severe enough to require stitches. (Id.) S.M. was transported to the hospital immediately. (Id.) Nathison and Holley each observed the stitches on S.M.'s head the next day. (Nathison Aff., ¶ 8; Holley Aff., ¶ 9)

It is also undisputed that, while E.W. did sustain injury as a result of the school bus fight, the injuries were minor and more in keeping with the typical bumps and scrapes one would expect from a physical affray between students. When Officer Smith visited E.W.'s home later that day, he observed that the area around E.W.'s nose was bruised, and that there was a small amount of blood on the surface of the skin. (Police Report) Plaintiff has presented no evidence that his injuries required medical treatment of any kind.

Based on the foregoing, it is undisputed that E.W. caused injury to S.M. which was significantly more serious than that caused by S.M. to E.W. Because S.M. did not cause serious physical injury to E.W., S.M. was only found to have violated the Fighting Policy, which required mere short-term suspension. (Holley Aff., ¶ 17) In contrast, because E.W. caused serious physical injury to S.M., requiring hospitalization and stitches, E.W. was found to be in violation of the Assault Policy, which required long-term suspension. (Nathison Aff., ¶ 14) Both Nathison and Holley stated that, had S.M. not required stitches, E.W.'s conduct would have been characterized as a violation of the Fighting Policy only, and E.W. therefore would have been suspended only for five days. (Id., ¶ 15; Holley Aff., ¶ 15)

The school-based panel agreed with Holley and Nathison's determination and found E.W. to have violated the Assault Policy. (Holley Aff., Ex. C) The school-based hearing report notes that the panel disagreed with the recommended suspension length, but understood that the long-term suspension was required by the Assault Policy. (Id.) These findings were upheld when appealed both to the superintendent as well as the Board of Education. (Id., Ex. D-E)

Because E.W. was subject to discipline for violating the Assault Policy, but S.M. was subject to discipline only for violating the Fighting Policy, it is clear that E.W. and S.M. were not similarly situated. See Vaughn, 2009 WL 7051695, at *7 (holding that, regarding discipline imposed following a prison fight, plaintiff and another inmates were not similarly situated where plaintiff used a weapon to cause a laceration to the other inmate, who did not use a weapon or cause serious injury). Accordingly, plaintiff cannot prevail on his equal protection claim, and defendants are entitled to judgment as a matter of law. Defendants' motion for summary judgment is GRANTED as to plaintiff's equal protection claim.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED in its entirety. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 11th day of April 2011.

LOUISE W. FLANAGAN
Chief United States District Judge